## MARTIN v. CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department.    July 23, 1898.)

1. MUNICIPAL CORPORATIONS—INADEQUATE SEWERS—LIABILITIES.

A municipality cannot lawfully maintain a system of sewerage changing the natural surface flow of the rain water, which system, by reason of its inadequacy to carry off the rain and sewage together, under conditions which may reasonably be anticipated, creates a nuisance upon the property of adjacent landowners.

2. SAME—DAMAGES.

If an overflow thus occasioned causes lime upon the premises to slake, and set fire to the building, the city is liable in damages for the resulting destruction of property.

Appeal from trial term, Kings county.

Action by Thomas F. Martin against city of Brooklyn.    From a judgment in favor of defendant, and from an order denying a motion for a new trial, plaintiff appeals.    Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Robert Stewart, for appellant.

Almet F. Jenks and Jerome W. Coombs, for respondent.

WILLARD BARTLETT, J.    The plaintiff was the owner of some woodwork and other materials which he had acquired under a contract to take down and remove a dwelling house in the city of Brooklyn.    He stored this stuff in a building on a lot near Third street, Third avenue, and the Gowanus Canal.    A large quantity of lime, belonging to a co-tenant, was stored in barrels in the same building.    On the afternoon of August 31, 1895, about 6 o'clock, there was a violent thunderstorm in this locality, in which the fall of rain was very heavy.    The case of the plaintiff, as presented for the consideration of the jury upon the trial, was that the city sewers in the neighborhood, being inadequate to carry off the rainfall, became flooded, and forced a large quantity of water onto the lot and into the building where the lime was stored, causing the lime to slake, and set fire to the building, thus destroying the woodwork and other materials already mentioned.    The liability of the defendant under such circumstances is asserted on the authority of Seifert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321.    We think the proof sufficed to bring the present case within the doctrine of that decision.    A municipality cannot lawfully maintain a system of sewerage changing the natural surface flow of the rain water, which system, by reason of its inadequacy to carry off the rain and sewage together under conditions which may reasonably be anticipated, creates a nuisance upon the property of adjacent landowners.    There was ample evidence that the Third avenue sewer had often before been so overburdened as to force up the manhole covers in the street, and let out large quantities of water onto the surface, which sometimes flowed into the adjoining lots.    It is true that this happened only in heavy storms; but it occurred frequently enough to show that the system of sewers in that part of the city was incapable of

carrying off the quantity of rain and sewage which ought reasonably to have been expected to flow into it, under conditions of the weather which are by no means unusual.    It is also true that on the occasions prior to August 31, 1895, when the surplus from the sewer had been forced across the sidewalk onto private property, it had flooded the land of the Montauk Ice Company, and not the building in which the lime and the plaintiff's property were stored.    That company, however, had recently raised the grade of the sidewalk opposite its premises, with the effect of protecting them against any such flood; so that on August 31, 1895, the overflow for the first time found its way to the storehouse occupied by the plaintiff and the lime owner. Assuming the inadequacy of the sewer, any property owner whose premises were likely to be flooded had the right to protect himself, if he could, by the erection of a barrier; and the liability of the city for injury done by the overflow was not affected by the fact that such a barrier changed the direction of the moving water, and threw it upon land which would not otherwise have suffered.    It was the duty of the city, if it undertook the construction of a sewer there at all, to construct it in such a way that even in heavy rains none of the neighboring private property should be flooded by reason of its lack of capacity.

After the violence of the thunderstorm had subsided, and the water was discovered surrounding the lime, apprehensions of fire were entertained by one of the witnesses, who kept watch about the building, observed that the water had all soaked or flowed away by 9 o'clock in the evening, and finally left the place, at about 1 o'clock a. m.    At 6 o'clock in the morning, the lime barrels were found to be on fire, and the building was speedily consumed.    The fact that slaking lime will set fire to anything combustible in contact with it was not questioned on the trial; but some expert testimony was introduced by the defendant tending to show that combustion would have ensued with far greater rapidity than it did in this case if the water alleged to have proceeded from the flooded sewer had really caused the slaking of this stored lime.    Notwithstanding this testimony, however, I think the evidence established by an overwhelming preponderance of proof that the water which surrounded the lower tier of barrels after the storm did slake the lime sufficiently to start the fire.

So, also, it seems to me that the verdict is clearly against the evidence upon the whole case.    The city called only one witness who was in the vicinity of the burned building on August 31, 1895.    He was a policeman, who swore that he never saw any water coming out of the manholes on Third avenue, although he admitted that he had seen the manhole plates quivering.    He saw no water pouring out of the manholes during the thunderstorm of that day, but admitted having seen at that time water running down the lots between the building and Third street.    Another policeman, whose beat was in that locality for 14 months, had not observed anything with relation to the manhole covers of the sewers on Third avenue.    Still another witness was a roundsman, who at first confused the thunderstorm of August 31, 1895, with the blizzard of March, 1888, and whose

testimony was too indefinite to be of the slightest value. The proof put in by way of defense left the case for the plaintiff so slightly disputed that the verdict for the defendant was against the evidence, and must therefore be set aside, and the plaintiff allowed to have a new trial upon the payment of the usual costs.

Order denying motion for new trial reversed, and new trial granted, upon appellant within 20 days paying the trial fee and disbursements of the trial; and, in case of such payment being made, the judgment appealed from is vacated. In case of the failure of the appellant to comply with the terms aforesaid, judgment and order appealed from affirmed, with costs. All concur.